UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SPECIALTY COATING SYSTEMS, INC., a Delaware corporation, | Case No. 1:10-CV-348-REB |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| WARREN PHILLIP BOOMER, an individual; and KISCO CONFORMAL COATING, LLC. | |
| Defendants. | |

Currently pending before the Court is Defendants' Motion for Summary Judgment (Dkt. 38).[1]  This matter has come before the undersigned United States Magistrate Judge pursuant to the consent of the parties.  *See* Dkt. 25; 28 U.S.C. § 636(c), Fed. R. Civ. P. 73. The Court has carefully reviewed the record; considered the oral argument of counsel at the June 15, 2011 hearing; and now enters the following Order granting in part and denying in part Defendants' Motion.

## BACKGROUND

---

[1]  Also pending are: (1) Plaintiff's Motion to Amend/Correct Case Management Order (Dkt. 39); (2) Plaintiff's Amended Motion to Amend (Dkt. 55); (3) Plaintiff's Motion to Compel (Dkt. 49), and (4) Defendants' Motion to Compel (Dkt. 50).  The Court directed the parties to meet in person and discuss a strategy for resolving their disputes and moving discovery forward. *See* Dkt. 61.  The Court also directs the parties to discuss an appropriate amended schedule and file an amended, stipulated litigation plan along with the status report due within seven days of the conference.  *Id.*

Plaintiff, Specialty Coating Systems ("SCS") is a Delaware corporation with its principal place of business in Indianapolis, Indiana. *Defendants' Statement of Undisputed Facts*, p. 1 (Dkt. 38-1). SCS provides parylene coating services. *Id.* at p. 2.

As SCS describes, the parylene coating business is highly technical in nature. *Plaintiff's Opposition to Defendants' Motion for Summary Judgment*, p. 4 (Dkt. 42). SCS takes great efforts to understand its clients and provide specific products to meet their needs, and this knowledge is critical to its success. *Id.* To protect its interest in that client knowledge, SCS depends on its employees' confidentiality and good faith. *Id.*

Defendant, Warren Boomer, is a former employee of SCS who resides in Boise, Idaho. *Defendants' Statement of Undisputed Facts*, p. 1 (Dkt. 38-1). Boomer was the Northwest Regional Sales Manager, responsible for selling SCS products in the Northwest Territory- an area including California, Oregon, Washington, Nevada, Idaho, Wyoming, and Montana. *Id.* at p. 2. Boomer is now employed by Defendant, Kisco Conformal Coating, LLC ("Kisco"), a Delaware corporation with its principal place of business in California. *Amended Complaint*, ¶ 3 (Dkt. 1-5)

There are three contracts governing the employment relationship between Boomer and SCS. First, at the outset of his employment with SCS, Defendant Boomer signed an Employee Non-Competition Agreement ("Non-Competition Agreement"). *See* Ex. 1, *Becker Statement in Support of Defendants' Motion for Summary Judgment* (Dkt. 38-3). In this Non-Competition Agreement, Boomer agreed that, for the period of his

employment and for twelve months thereafter, he would not work for any business interest in competition with SCS within the states comprising the Northwest Territory. *Id.*

Second, also at the outset of his employment with SCS, Boomer signed an Employee Confidentiality and Non-Solicitation Agreement (the "Confidentiality and Non-Solicitation Agreement.") *Id.* at Ex. 2. In the Confidentiality and Non-Solicitation Agreement, Boomer agreed that he would not solicit SCS employees or encourage any customer to terminate or alter its business relationship with SCS "for a period of time not to exceed 18 months from the date [his] employment with the company terminates." *Id.* Boomer also promised to never disclose SCS's confidential information. *Id.*

Third, upon termination of his employment with SCS in March 2008, Boomer signed a Separation Agreement with SCS. *Id.* at Ex. 3. In the Separation Agreement, Boomer released his right to bring certain legal claims against SCS in exchange for severance benefits. *Id.* The Separation Agreement also refers to the previous agreements stating, "[b]oth before and after the Termination Date, you will continue to be bound by, and will comply fully with your obligations under your Employee Non-Competition Agreement and your Employee Confidentiality and Non-Solicitation Agreement." *Id.*

On or about March 5, 2009, less than a year after Boomer's Termination Date, SCS learned that Boomer had taken a position with Kisco, a direct competitor in the parylene coating market. *Plaintiff's Opposition to Defendants' Motion for Summary*

*Judgment*, p. 5 (Dkt. 42). Boomer was working as the National Sales Manager for Kisco, and SCS alleges that Boomer worked with customers throughout the country, including those same states for which he was responsible as the Northwest Territory Sales Manager for SCS. *Id.* at p. 5, n. 2. SCS further alleges that, around this same time, it also learned that Boomer had contacted certain SCS customers, who are not generally known in the industry as parylene conformal coating customers. *Id.* at p. 5.

## PROCEDURAL HISTORY

On July 28, 2009, SCS sued Boomer in Idaho state district court alleging claims of breach of contract and unjust enrichment. SCS contends that, as a result of discovery in the state court action, SCS came to believe that Boomer's new employer and SCS's competitor, Kisco, knew of Boomer's post-SCS employment obligations, but nonetheless "sanctioned and encouraged his wrongful conduct." *Plaintiff's Opposition to Defendants' Motion for Summary Judgment*, p. 6 (Dkt. 42). SCS also came to believe that Kisco used SCS's confidential and proprietary information to its benefit and engaged in a course of business conduct specifically intended to harm SCS. *Id.* SCS then moved to file an amended complaint with claims against Boomer and Kisco, including the previous claims against Boomer and adding claims for misappropriation of trade secrets in violation of Idaho Code §§ 48-801, *et seq.* against both Defendants, a tortious interference with contract claim against Kisco for interfering with the contract between SCS and Boomer, and tortious interference with prospective economic advantage claims against both

Defendants for interfering with SCS's relationships with existing and prospective customers.

After the Amended Complaint was filed, in July 2010, Kisco removed the case to federal district court. On October 7, 2010, the Court provided Defendants with leave to file a dispositive motion regarding the scope and applicability of the agreements between SCS and Boomer. Dkt. 33. Defendants now seek summary judgment to establish the following as a matter of law: (1) Indiana law applies to all of Plaintiff's claims; (2) Boomer did not breach Section Two of the Employee Confidentiality and Non-Solicitation Agreement; (3) the geographic restriction contained in the Employee Non-Competition Agreement is overly broad and unenforceable; and (4) recovery on Plaintiff's claims against Boomer (if any) is limited to the liquidated damages described in the Separation Agreement.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

As set forth below, the Court will grant Defendants' motion for summary judgment to the extent it finds on the current record, as a matter of law, that the undisputed facts reflect that Indiana law applies to the breach of contract, unjust enrichment, and tort claims. The Court will deny the motion in all other regards.

### A.    Standard of Law

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims ...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, (1986). Material facts are those which may affect the outcome of the case. *See id.* at 248. The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.*

## B. Applicable Tort Law

The parties agree that Indiana law applies to Plaintiff's contract and unjust enrichment claims. In the Amended Complaint, Plaintiff also pled violations of Idaho trade secret and tort law. *See* Dkt. 1-5. On summary judgment, Defendants argue that Indiana law should also apply to these claims. In response, Plaintiff argues either Idaho law applies or, in the alternative, the Court should defer a ruling on the choice of law for the trade secret and tort claims, because the parties are still conducting discovery relevant

to the issue.  *Plaintiff's Opposition to Defendants' Motion for Summary Judgment*, p. 9 (Dkt. 42).

### 1.     Standard of Law: "Most Significant Relation Test"

A federal district court sitting in diversity must apply the forum state's choice of law rules to determine the controlling substantive law.  *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005).  Idaho applies the "most significant relation test" as set forth in the Restatement (Second) Conflict of Laws § 145 to determine the applicable law.  *Grover v. Isom*, 137 Idaho 770, 53 P.3d 821, 823-24 (2002).  This test requires courts consider the following facts in making their determination: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  *Id*. at 824.

The most important factor is where the injury occurred.  *Id*.  However, "[t]he goal of this test is to identify the state most significantly related to a particular issue and to apply its law to resolve that issue."  *Seubert Excavators, Inc. v. Anderson Logging Co.*, 126 Idaho 648, 889 P.2d 82 (1995).

### 2.     Analysis

Defendants argue that Indiana law should apply, because (1) that is where Plaintiff's corporate headquarters is located; (2) the alleged injury to business interests occurs in the jurisdiction in which SCS feels economic pain; i.e., the corporate

headquarters; (3) the allegations of improper use of SCS's "customer information" occurred in multiple, unspecified jurisdictions; and (4) SCS chose its home forum to govern the contracts. *Memorandum in Support of Defendants' Motion for Summary Judgment*, pp. 9-10 (Dkt. 38-2). At oral argument, SCS argued that Idaho law should apply, because: (1) Boomer is an Idaho resident; (2) Boomer was SCS's corporate representative in the Northwest Territory; and (3) the damages he allegedly caused were to SCS's business interests in the Northwest Territory.

The Court is persuaded that Indiana has the most significant relation to the injuries, because that is where the pecuniary injury occurred, where SCS is located, and the place where the parties' relationship was centered, as reflected by the contracts' choice of law provisions.

Generally, when the injury suffered is "loss of customers or trade," the place of injury does not play as important of a role as it does in other tort cases. *See* Restatement (Second) Conflict of Laws § 145, comment f. This is because:

> The effect of the loss, which is pecuniary in its nature, will normally be felt most severely at the plaintiff's headquarters or principal place of business. But this place may have only a slight relationship to the defendant's activities and to the plaintiff's loss of customers or trade.

*Id.*

Unfortunately, the record is silent regarding the place in which the conduct occurred. The Court presumes that the conduct alleged, the solicitation of clients and

employees and the sharing of confidential information, may have occurred over the telephone or through other electronic means of communications between the customers' locations and Boomer's home office in Boise, Idaho, with other related communications going to and from Kisco's offices in California. Another possibility is that conduct occurred in various states, and that the relationship of such other states to this lawsuit is almost no consequence. Accordingly, the Court has no basis to conclude that this prong of the analysis favors any one state over another.

Moreover, the particular residence of the parties does not help resolve the conflict of laws issue. Boomer resides in Idaho, but SCS is headquartered in Indiana and Kisco is based in California.

The most important factor in the Court's analysis is the place of the parties' relationship, and the undisputed facts reflect that this relationship is tied most closely with Indiana. The agreements at issue make clear that Indiana law governs the parties' relationship. Moreover, the claims against Boomer are inextricably linked to this relationship. Without it, Boomer would not have had access to the alleged confidential information and company goodwill, nor would there be any issues raised as to whether he has breached duties owed to SCS from the circumstances of his leaving that company.

For these reasons, Indiana law applies to the tort claims raised in the Complaint. Indiana is the state most significantly related to the issues raised by the tort claims.

### 3.     Summary Judgment on the Governing Law is Not Premature

In opposing summary judgment on this issue, Plaintiff asks the Court to make inferences from the allegations in the Amended Complaint that Idaho law applies and also states, "[b]ecause the parties have not yet had a full opportunity to explore the details of the conduct in question, including but not limited to any economic impact on SCS, a ruling on the choice of law issue would be premature." *Plaintiff's Opposition to Defendants' Motion for Summary judgment*, p. 10 (Dkt. 42).

These arguments are insufficient. First, in order to make any inferences in the non-moving party's favor, the Court must have facts to draw upon, and the burden is on Plaintiff to demonstrate to the Court what facts exist to support the inference that Idaho law applies to its tort claims.

On summary judgment, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en banc*). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a specific finding of fact. *Id*. at 256–57. The non-moving party must go beyond

the pleadings and show by "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

Second, in opposing a motion for summary judgment on the basis that it is premature in light of on-going discovery, the non-moving party must comply with Federal Rule of Civil Procedure 56(d). Under Rule 56(d)(2), the Court may allow time to obtain affidavits or declarations or take discovery "if the nonmoving party shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."

Rule 56(d) requires "(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *Sultana Resources, LLC v. Trio Gold Co.,* No. CV-06-625-BLW, 2007 WL 2993849, at *1 (D. Idaho Oct. 11, 2007) (quoting *Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129 (9th Cir. 2004)). The party submitting a Rule 56(f) motion bears the burden of showing sufficient facts establishing that the evidence sought exists and that the evidence would prevent summary judgment. *Sultana*, 2007 WL 2993849 at *1. "Mere hope that further evidence will develop prior to trial is insufficient." *Id.* Plaintiff has not met this legal standard.

In short, it is not sufficient for Plaintiff to rely on the pleadings alone or make bald statements concerning disputed facts or the need for more time to find facts to support its position. Further, without any facts in the record to support Plaintiff's allegation that

Idaho law applies, the Court is left only with undisputed facts supporting a finding that Indiana law applies to the tort claims, fundamentally because this is the state law governing other aspects of the parties' relationship. Accordingly, the Court finds, as a matter of law, based on the undisputed facts, that Indiana law applies to Plaintiff's tort claims.

## C. Contract Claims

There are three contracts at issue: the Non-Competition Agreement , the Confidentiality and Non-Solicitation Agreement, and the Separation Agreement. With regard to these contracts, Boomer argues: (1) he did not breach section Two of the Confidentiality and Non-Solicitation Agreement because the temporal scope of the provision is indeterminate; (2) the geographic scope of the Non-Compete Agreement is unreasonably broad and unenforceable; and (3) the relief against Boomer is limited to the liquidated damages provisions set forth in the Settlement Agreement.

Under Indiana law, the Court generally interprets a contract consistent with the parties' intent when they wrote it. *Ferrell v. Dunescape Beach Club Condominiums Phase I, Inc.*, 751 N.E.2d 702, 709 (Ind App. 2001). "Absent ambiguity, the terms of a contract will be given their plain and ordinary meaning." *Id.* "[A]mbiguity exists only where reasonable people could come to different conclusions about a contract's meaning." *Id.*

Additional contract interpretation rules apply when construing a covenant not to compete in employment contracts. Indiana law strongly disfavors such covenants, because they constitute restraints on trade. *Central Ind. Podiatry, P.C. v. Krueger*, 882 N.E.2d 723, 728–29 (Ind.2008) (citations omitted). Such covenants are construed strictly against employers. *Id.*

"In order to be enforceable, the provisions of a covenant not to compete must be reasonable, which is a question of law." *Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 913 (Ind.App. 2011). To be reasonable, the agreement must "protect legitimate interests of the employer, and the restrictions established by the agreement must be reasonable in scope as to time, activity, and geographic area." *Id*. at 729. The burden is on the employer to demonstrate that the restriction is reasonable. *Id.*

**1.     Section Two of the Employee Confidentiality and Non-Solicitation Agreement**

Plaintiff contends that he did not, indeed he could not, violation Section Two of the Employee Confidentiality and Non-Solicitation Agreement, because the promise contained therein is for an indefinite term. The Court cannot grant summary judgment on this issue on the current record.

Section Two of the Employee Confidentiality and Non-Solicitation Agreement states:

> In order to further protect the company's legitimate business interests, I agree that I will not, directly or indirectly: (a) attempt to hire any of the Company's employees; (b)

> encourage any employee to terminate his/her employment
> with the Company; or (c) encourage any customer or supplier
> to terminate or alter its business relationship with the
> Company *for a period of time not to exceed 18 months from*
> *the date employment with the company terminates.*

See Ex. 2, *Becker Statement in Support of Defendants' Motion for Summary Judgment*

(Dkt 38-3).

Defendants' propose one reasonable interpretation of this provision, albeit an

interpretation that almost certainly implies the existence of a scrivener's error or the

existence of a patent ambiguity (*i.e.*, that the term could have been one day or 18 months,

or anything in between) at odds with what otherwise is clear evidence that the parties

intended for there to be some period of time in which Boomer could not compete with his

former employer.  Plaintiff offers an equally plausible interpretation of the contract- that

the parties agreed for it to apply for a period of 18 months following employment.[2]

Accordingly, Defendants' motion for summary judgment must be denied in this

regard.  The provision is ambiguous and will require proof of the parties' intent to allow

for a finding as to its actual meaning.

---

[2] Indeed, from the after-the-fact view from the courtroom, it is not surprising that  an eighteen month covenant not to compete has been held reasonable under Indiana law.  *See Gleeson v. Preferred Sourcing, LLC*, 883 N.E.2d 164 (Ind. Ct. App. 2008) (finding eighteen-month non-compete and confidentiality agreement reasonable); *Search v. Richards Dieterle & Co.*, 439 N.E.2d 208 (Ind. Ct. App. 1982) (finding three-year restrictive covenant enforceable).

## 2. The Geographic Scope of the Non-Competition Agreement

Defendants argue that the geographic limitation in the covenant not to compete is overly broad and unenforceable as a matter of law.

When evaluating whether a covenant is reasonable, courts consider whether the covenant is reasonably designed to protect the employer's legitimate interests; whether the restrictions are reasonable in terms of time, geography, and the types of activities prohibited; and the Court must also consider the public interest. *Pathfinder Communications Corp. v. Macy,* 795 N.E.2d 1103, 1109 (Ind. App. 2003); *Burke v. Heritage Food Serv. Equip., Inc.,* 737 N.E.2d 803, 811 (2004). When evaluating the reasonableness of a geographic limitation specifically, the courts' focus on whether it is any broader than the area in which the employee worked. *See Commercial Bankers Life Ins. Co. of Am. v. Smith*, 516 N.E.2d 110, 114 (Ind.App. 3 Dist. 1987) (citing *Frederick v. Prof. Bldg. Maintenance Ind., Inc.*, 344 N.E.2d 299 (Ind. App. 1976); *4408, Inc. v. Losure*. 373 N.E.2d 899 (Ind. App. 1978)). In addition, "the geogrraphic limit must ordinarily be no broader than the scope of the employee's former responsibilities." *Product Action Inter., Inc. v. Mero*, 277 F.Supp.2d 919, 925 (S.D. Ind. 2003).

Section One of the Non-Competition Agreement states:

> I will not work for or render services to any business that is in competition with any of the businesses carried on by the Company, unless I first obtain the Company's written consent. I agree that a 'business which is in competition with any of the businesses carried on by the Company' means a business that designs, manufactures, markets or sells a product or provides a

service that involves the practical knowledge of parylene, coating equipment, service, and dimer in the following regional geographic area: (California, Oregon, Washington, Nevada, Idaho, Wyoming, Montana) I also agree that this restriction on my future employment is reasonable given the level of my involvement with and responsibility for the Company's products and/or services, the international nature of the Company's business and the limited duration of the restriction.

Ex. 1, *Becker Statement in Support of Defendants' Motion for Summary Judgment* (Dkt. 38-3).

The geographic scope of the Non-Competition Agreement includes the seven western states comprising the Northwest Territory of SCS's business: California, Oregon, Washington, Nevada, Idaho, Wyoming, and Montana. As a Regional Sales Manager, this was the region Boomer was assigned to serve. Accordingly, the geographic scope of the restriction, on its face, is reasonable.

Nonetheless, Defendants also argue that the geographic scope of the Non-Compete Agreement was not reasonable, because: (1) Boomer was not a "key" employee thus justifying a broad geographic scope of restricted activity; (2) the nature of the parylene coating industry is national or international in scope and not easily susceptible to regional restrictions; and (3) while Kisco served clients in Boomer's former territory, Boomer only serviced client east of the Mississippi River from Kisco's Connecticut office. These arguments are not persuasive in the summary judgment context.

First, as a matter of law, Indiana case law does not require that an employee be a "key employee" in order for a non-compete to be valid.[3] Indiana law, which disfavors covenants not to compete as restraints on trade, generally requires that a covenant not to compete be reasonable. "The ultimate determination whether a covenant not to compete is reasonable is a question of law for the court to decide. . . . Whether a particular covenant is reasonable depends upon the facts and circumstances of the particular case." *Hahn v. Drees, Preugini & Co.*, 581 N.E.2d 457, 459 (Ind. App.2d 1991) (citations omitted). The focus of the inquiry requires the employer to "demonstrate that the former employee has gained a unique competitive advantage or ability to harm the employer before such employer is entitled to the protection of a noncompetition covenant." *Id.*

The suggestion that Boomer was not a key employee is not sufficient to warrant summary judgment in this regard. There are other aspects of his employment, including knowledge about customers, and good will developed with such customers in the

---

[3] See Woodward Ins., Inc. v. White, 437 N.E.2d 53, 63 (Ind. 1982) (recognizing employer is entitled to protect business goodwill including secret or confidential information such as customers' names, addresses and requirements and the business advantage acquired through salesman's customer contacts, but not the skill the employee acquires or the general knowledge or information he obtains not directly related to goodwill or value of business); *Licocci v. Cardinal Assocs., Inc.*, 445 N.E.2d 556, 563 (Ind.1983) (holding that under the circumstances of the case, repeat business for certain products was a protectable interest rendering restrictive covenant to protect that interest reasonable); *McGlothen v. Heritage Envtl. Servs., L.L.C.*, 705 N.E.2d 1069, 1072-73 (Ind.Ct.App.1999) (holding former employer had interest in goodwill and confidential information protectable by covenant not to compete against former project and division manager); *Norlund*, 675 N.E.2d at 1154 (concluding employer has an interest in the goodwill created by a salesman on the employer's behalf that may be protected with a covenant not to compete as may an employer's interest in trade secrets); *4408, Inc. v. Losure,* 373 N.E.2d 899, 901 (Ind.Ct.App.1978) (holding salesman's familiarity with customers and their accounts is an interest justifying restraint).

Northwest Territory, that could support a reasonable inference that Boomer had a unique competitive advantage sufficient for SCS to protect through a non-compete limited to those states comprising the Northwest Territory.

Second, the Court can infer that the nature of the parylene coating industry lends itself to regional divisions. SCS divided its market into territories, reflecting a sales program divided into regions.

Third, Boomer was in charge of the Northwest Territory when he worked for SCS. Less than a year later, his sales territory for Kisco was national. The Court can infer from these undisputed facts that his new responsibilities included time and effort directed within the same area as SCS's Northwest Territory. If Boomer did not solicit clients in such a region, then he can challenge whether he breached the agreement, not to whether it was reasonable in geographic scope.

In sum, the Court denies Defendants' Motion seeking a holding that, as a matter of law, that the geographic scope of the Non-Competition Agreement was not reasonable and therefore unenforceable.

### 3. The Separation Agreement's Liquidated Damages Provision

Defendants argue that, if the agreements at issue are enforceable, any damages against Boomer are limited to the liquidated damages provision of the contract.

The Termination Agreement contains the following language:

> **Compliance with restrictive covenants**. Both before and
> after the Termination Date, you will continue to be bound by,

and will comply fully with, your obligations under your Employee Non-Competition Agreement and your Employee Confidentiality and Non-Solicitation Agreement with SCS, both signed by you on May 19, 2006. Copies of these documents are being provided to you.

**Severance Benefits**. SCS will continue to pay you an amount equal to your current base salary (at the rate of $1,471.16 per week) and to provide you with the employee benefits you are currently receiving from SCS (subject to eligibility requirements of our benefits-providers, and excluding benefits consisting of vacation day accruals or additional contributions by you or us to our 401(k) plan) for a period of eight weeks following the termination date. Additionally, SCS will pay your Regional Sales Commissions through March, 2008. If you revoke this Separation Agreement, or fail to comply with this Separation Agreement or either of the . . . [Non-Compete and Confidentiality Agreements], however, you will not receive these payments or benefits, and you will be required to return to SCS the full value of all such payments and benefits previously provided to you.

Ex. 3,  *Becker Statement in Support of Defendants' Motion for Summary Judgment*  (Dkt. 38-3).

The Court does not agree.  As Plaintiff argues, the liquidated damages provision applies only to Plaintiff's claim for breach of contract damages - not to the tort claims against Boomer or to any claims against KCC.

"The term 'liquidated damages' applies to a specific sum of money that has been expressly stipulated by the parties to a contract as the amount of damages to be recovered by one party for a breach of the agreement by the other, whether it exceeds or falls short of actual damages." *Time Warner Entertainment Co, L.P. v. Whiteman*, 802 N.E.2d 886,

893 (Ind. 2004). "A typical liquidated damages provision provides for the forfeiture of a stated sum of money upon breach without proof of damages." *Gershin v. Demming*, 685 N.E.2d 1125, 1127 (Ind. App. 1997).

Neither party disputes the enforceability of the liquidated damages provision. However, typically the issue of whether liquidated damages are enforceable depends on whether the liquidated damages are proportionate to the loss and whether the damages are not easily measured by any exact pecuniary standard. *Time Warner*, 802 N.E. 2d 893 (citing *Jaqua v. Headington*, 16 N.E. 2d 527, 528 (1988)).

The whole purpose of a liquidated damages provision is to identify an appropriate measure of damages caused by a breach of contract to compensate the injured party. If the conduct underlying the breach of contract also constitutes a separate tort with a separate and distinct injury, then the liquidated damages cannot be assumed to compensate the injured party for that separate injury.

In short, the Court does not find, as a matter of law, that Plaintiff is limited to the liquidated damages provision in the Separation Agreement. Accordingly, Defendants' summary judgment motion must be denied in this regard.

## CONCLUSION

In sum, Defendants' Motion for Summary Judgment is granted solely with regard to the application of Indiana law to Plaintiff's contract and tort claims. In all other respects, Defendants' motion is denied.

**ORDER**

Defendants' Motion for Summary Judgment (Dkt. 38) is GRANTED in part and DENIED in part. The motion is granted only to the extent that the Court finds Indiana law applies to all of Plaintiff's claims. The motion is denied in all other respects.

DATED: **June 17, 2011**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge